**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD ULRICH | : | CIVIL ACTION NO. **1:CV-14-1025** |
| | : | |
| Plaintiff | : | (Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| TOM CORBETT, *et. al*, | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I.    BACKGROUND.

On May 28, 2014, Plaintiff Richard Ulrich, currently an inmate at the State Correctional Institution at Benner Township ("SCI-Benner Township"), Bellefonte, Pennsylvania, filed, *pro se*, the instant civil rights action pursuant to 42 U.S.C. §§ 1983 and 1985(3).[1]  **(Doc. 1)**.  Plaintiff also filed a Motion to Appoint Counsel on May 28, 2014.  (Doc. 2).  On June 6, 2014, Plaintiff filed a Motion for a temporary restraining order without a support brief.  (Doc. 7).  Plaintiff further filed an *in forma pauperis* Motion.  (Doc. 9).  Finally, Motions to Intervene as Plaintiffs under Rule 24 were filed in this case by SCI-Benner Township inmates Sam Rose, Maurice Elijah Ray, and Anthony Autwell since they aver they were "fed sodium pentothal in the prison food and commissary items"

---

[1]Plaintiff recently filed another civil rights action with this Court on May 13, 2014.  *Ulrich v. Corbett*, Civil No. 14-0919, M.D.Pa.  On May 30, 2014, Plaintiff filed an Amended Complaint.  Plaintiff named Tom Corbett, Governor of the Commonwealth of Pennsylvania, and Tom Ridge, former Governor of the Commonwealth of Pennsylvania, as Defendants.  Plaintiff also filed a Motion to Appoint Counsel and Motions to Intervene.  On June 10, 2014, we recommended that Plaintiffs Motion to Appoint Counsel and Motions to Intervene be denied.  Further, we recommended that Plaintiff's Complaint be dismissed with prejudice against the Defendants.  On July 8, 2014, the Court issued a Memorandum and Order adopting our R&R in Plaintiff's Civil No. 14-0919 case and dismissed with prejudice Plaintiff's Complaint.

similar to Plaintiff Ulrich's allegations in his Complaint.  (Docs. 6, 8 & 13).  On July 14, 2014, we issued an Order (Doc. 15) denying Plaintiff's Doc. 2 Motion to Appoint Counsel and the Docs. 6, 8 &13 Motions to Intervene.  In the same Order, we also deemed Plaintiff's Doc. 7 Motion for a temporary restraining order as withdrawn, since Plaintiff did not file a support brief as is required.

Plaintiff's rambling and disjointed Complaint consists of fourteen (14) single-spaced, typed pages with 123 paragraphs.  Plaintiff indicates in his caption and "Plaintiffs" section that his Complaint is filed on behalf of "others similarly situated," *i.e.*, as a class action.  (Doc. 1, p. 1).  It appears Plaintiff is essentially alleging that Defendants Corbett and Wetzel have violated 61 Pa.C.S. § 4304(a), Method of Execution.  Additionally, Plaintiff claims a plethora of civil rights violations due to "the use of sodium pentothal in the prison foods and commissary items since 2011" and he alleges that he complained to Correctional Officers, medical personnel and the prison psychologist. (Doc. 1, p. 4).

Plaintiff also attaches a number of Exhibits to his Complaint  (Doc. 1, pp. 15-53), including: letters from "Andrea P. from Mary Mother of Captives," "with inferences in relations to his current criminal case and the use of sodium pentothal" (Doc. 1, pp. 15-16); cash slips regarding Plaintiff's sick calls (*Id*. at 17-19); a Chuck E. Cheese advertisement where Plaintiff seemingly notes inferences such as, "mouse placed into daughter's hair," "teddy bear," "frog," "ground hog with #7 on nose," "State of PA," "dove," "forms of seals," "pirate symbol, possibly Pittsburgh" (*Id*. at p. 20); a declaration from another inmate who states that Defendant Eakin called Plaintiff a "nut" when the inmate asked about paperwork filed against Defenant Eakin (*Id*. at 21); Plaintiff's withdrawal of his criminal complaint against Defendant Eakin (*Id.*, p. 22); two declarations from Plaintiff (*Id.*, pp. 23

& 25) regarding his averments that the prison has experimented with him and other inmates as to how the mind reacts to the use of sodium pentothal ; and another declaration from an inmate who states "Officer Nash confirmed that thier (sic) is in fact sodium pentothal in the DOC's food and commisarry (sic) items." (*Id.*, p. 24).

Plaintiff names as Defendants: (1) Tom Corbett, Governor of the Commonwelth of Pennsylvania; (2) John E. Wetzel, Secretary of the PA Department of Corrections ("DOC"); and (3) David Pickens, Superintendent of SCI-Benner Township.  In his Supplement, Plaintiff adds as his fourth Defendant M.E. Eakin, Correctional  Officer at SCI-Benner Township.  (Doc. 1-1, p. 1). Plaintiff indicates that Defendants are being sued individually and in their official capacity.  Plaintiff is correct in stating this Court has jurisdiction over his § 1983 and § 1985(3) civil rights case pursuant to 28 U.S.C. §§ 1331 and 1343(a).

We will now screen Plaintiff's Complaint in accordance with § 1915 of the PLRA.  *See Abdul-Akbar v. McKelvie*, 239 F. 3d 307, 314 (3d Cir. 2001); *Banks v. County of Allegheny*, 568 F.Supp.2d 579, 589 (W.D. Pa. 2008).

## II.   STANDARDS OF REVIEW.

### A.   PLRA

The Prison Litigation Reform Act of 1995,[2] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. §1915.  Specifically, § 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

(2) Notwithstanding any filing fee, or any

---

[2]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

> portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the
> court determines that (A) the allegation of
> poverty is untrue; or (B) the action or appeal
> (i) is frivolous or malicious; (ii) fails to state a
> claim on which relief may be granted; or (iii)
> seeks monetary relief against a defendant who
> is immune from such relief.

**B.**      ***42 U.S.C. § 1983***

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements:

(1) that the conduct complained of was committed by a person acting under color of state law; and

(2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured

by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v.*

*Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Further, Section 1983 is not a source of substantive

rights.  Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v.*

*Doe*, 536 U.S. 273, 284-85 (2002); see *also Holocheck v. Luzerne County Head Start, Inc.*, 385 F.

Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Slater v.Susquehanna County*, 613 F. Supp. 2d 653, 660

(M.D. Pa. 2009) (citations omitted); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 550 (M.D. Pa. 2007)

("only those who act under color of state law are liable to suit under section 1983.").  "In order to

satisfy the second prong [of a §1983 civil rights action], a Defendant does not have to be a state

official, but can also be held liable as a state actor." *Slater v. Susquehanna County*, 613 F. Supp.

2d at 660(citations omitted).

It is well-established that personal liability under section 1983 cannot be imposed upon a

state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362

(1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt,*

*supra.* It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id.* Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208.

The Court uses the same standard to screen a complaint as it does for a 12(b)(6) motion to dismiss. *See Tourscher v. McCullough,* 184 F.3d 236, 240 (3d Cir. 1999).

**C.      Motion to Dismiss**

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949

(citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).  *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (*quoting Twombly,* 550 U.S. at 555) (not precedential).

## III.   ALLEGATIONS OF COMPLAINT.

As mentioned, Plaintiff claims that Defendants Corbett and Wetzel have violated 61 Pa.C.S.

§ 4304(a)(1), Method of Execution, which states: "The death penalty shall be inflicted by injecting

6

the convict with a continuous intravenous administration of a lethal quantity of an *ultrashort-acting barbiturate* in combination with chemical paralytic agents approved by the department until death is pronounced by the coroner. The coroner shall issue the death certificate." 61 Pa.C.S. § 4304(a)(1) (emphasis added).  With respect to Defendant Corbett, Plaintiff claims "he has signed numerous death warrants for the use of Pentobarbital, a **SHORT-INTERMEDIATE ACTING BARBITURATE** to be used in the method of execution." (Doc. 1, p. 2)(emphasis original).  Plaintiff avers that Defendant Wetzel "has made numerous attempts and continues to make attempts at injecting the condemned with a short-intermediate acting barbiturate that has no authority given by statutes." (*Id*.).  Thus, Plaintiff states that "[u]pon information and belief, the continuous attempts at using pentobarbital will violate the Plaintiffs  Ulrich and Others similarly situated's (sic) constitutional rights amounting to illegal killing" and will "subject[] [Plaintiff] to a very painful and burning execution." (*Id*. at ¶¶ 14 & 29).  Apparently, Plaintiff believes that his civil rights will be violated by the manner in which he is executed.  With respect to this allegation, Plaintiff specifically alleges violations of due process, equal protection of the laws, privileges and immunities, and the Eighth Amendment's prohibition against cruel and unusual punishment.  (*Id*. at ¶¶ 108 & 109).  However, we note the important fact that Plaintiff has not received a death sentence in the Commonwealth of Pennsylvania.  On June 24, 2014, the undersigned's Chambers called SCI-Benner Township, and we were informed that Plaintiff's aggregate sentence is 12-24 years of incarceration.  Thus, Plaintiff alleges Defendants Corbett and Wetzel's disregard of Pennslyvania's execution statute will violate his civil rights, even though he has not been sentenced to death in the Commonwealth of Pennsylvania.

The majority of Plaintiff's Complaint, however, has to do with the assertion that "[w]e are being fed sodium pentothal through the prison food and commissary items.  Our Central (sic) nervous system's (sic) are/have built a tolerance to the effects of these anesthesias (sic)." (*Id.* at ¶ 45). Plaintiff essentially alleges that sodium pentothal is being put into prison food and commissary items to build-up a tolerance so that prisoners are aware of the pain of execution.  (*Id.* at ¶¶ 42 & 45). Plaintiff states the use of sodium pentothal was put into prison food and commissary items since 2011.  (*Id.* at ¶ 38). Plaintiff also avers that he complained to prison staff about the use of sodium pentothal in prison food and commissary items but to no avail.

Plaintiff mentions that on April 6, 2011, he "was transferred to S.C.I. Cresson via the following prisons S.C.I. Camp Hill, VA Doc, S.C.I. Graterford, S.C.I. Camp Hill and Blair County Prison." (*Id.* at ¶ 47).  Plaintiff later indicates he was transferred back to SCI-Benner Township on April 29, 2013.  (*Id.* at ¶ 68).  Plaintiff signed his present Complaint on May 19, 2014.  (*Id.* at p. 14). Thus, it appears that many of Plaintiff's allegations between April 6, 2011 and April 29, 2013, are either time-barred and/or are raised in an improper venue.  Plaintiff's Complaint is disjointed and confusing, such that we are unable to discern when or where his allegations took place.  Due to lack of clarity, we will only consider Plaintiff's claims arising after April 29, 2013, when Plaintiff was transferred back to SCI-Benner Township.  (*Id.* at ¶ 68).  Thus, we will not consider paragraphs 47- 67 of Plaintiff's Complaint commencing with events when Plaintiff was transferred to SCI-Cresson on April 6, 2011, since they appear to be time-barred and/or raised in an improper venue.

When Plaintiff arrived at SCI-Benner Township on April 29, 2013, he was placed in a cell with inmate Dave Higby.  (*Id.*).  Plaintiff avers that "Inmate Higby continued to torture the plaintiff

through inferences and different forms of communications with the use of sodium pentothal." (*Id.* at ¶ 71).  Further, Plaintiff states that while listening to the local radio station he would "become so enraged that he would began (sic) screaming at his radio as if he was speaking directly to the personalities behind the messages that he was perceiving to forms of psychotherapy and direct communications with a certain woman." (*Id.* at ¶ 73).  Thus, Plaintiff believed the radio was communicating with him in the form of subliminal messages.  (*Id.*).  Plaintiff contends this was due to the use of sodium pentothal being put into the prison food and commissary items.  (*Id.* at ¶ 77).

On June 29, 2013, Plaintiff alleges that he was evaluated by medical personnel due to his complaints to staff about the use of sodium pentothal on him and, he states that he was placed into a psychiatric observation cell ("POC").  (*Id.*).  The same day, Plaintiff states that he  filed a grievance regarding the use of sodium pentothal on him.  (*Id.* at ¶ 78).  After filing the grievance, Plaintiff states that he was diagnosed as delusional and subsequently classified as stability "D" mental status.  (*Id.* at ¶ 79).  Plaintiff states "[t]his was done to diminish my creditibility (sic) with the allegations of sodium pentothal and to show me that the men with psychological problems need help because of the effects of this drug (Sodium Pentothal)." (*Id.*).

Plaintiff contends he still felt the effects of sodium pentothal, having symptoms such as "deep states of depression, continuous pressure in head (sic), boring like pains, large amounts of precipitation (sic) while trying to work out, more then (sic) the other men." (*Id.* at ¶ 81).  Plaintiff then told Dr. Xue "that [he] was speaking to voices in his head that were at different locations, being in a office here at S.C.I. Benner Township and the State College and possibly individuals at a local radio station being B94.5." (*Id.* at ¶ 84).  Dr. Xue ordered Plaintiff to have a CAT Scan.  (*Id.*).

Plaintiff believes Dr. Xue did this in order to "lable (sic) the plaintiff as having scizophrenia (sic) to diminish plaintiff's credibility even further with his assertion with sodium pentothal." (*Id.*).

The remainder of Plaintiff's Complaint concerns various symptoms he alleges were caused by the sodium pentothal, including: large amounts of pressure in his head; understanding subliminal messages through music, television, signs, and signals; hearing voices and seeing images in his head; and a drastic drop in weight loss.  (*Id.* at ¶¶ 85-101).  Finally, "Plaintiff believes upon and information and belief, that [radio station] B94.5 was contracted to play certain music to use in illiciting (sic) mens past thoughts to perform a version of self-psychotherapy and intentionally torture plaintiff in how his mind would percieve (sic) certain music as if this woman was communicating with him by using different jondras (sic) of music to crucify plaintiff because of his past and willing to speak out on the corruption." (*Id.* at ¶ 102).

Plaintiff also supplemented his Complaint to add M.E. Eakin, Correctional Officer at SCI-Benner Township, as a Defendant.  Plaintiff avers that Defendant Eakin stated "you will lose" while Plaintiff was eating in order "to instill fear and paranoia," such that he would not speak out about his criminal case or the use of sodium pentothal on inmates.  Additionally, Plaintiff states that Defendant Eakins monitors him using devices and sensors, which is "a new form of brain mapping, through sensoring (sic) devices here in the institution." (Doc. 1-1 at ¶ 3).  Plaintiff contends that Defendant Eakin "would torture plaintiff's mind and then reward him with vivid images (sexual in nature) of their bodies to release the anger inside of him." (*Id.* at ¶ 4).  Finally, Plaintiff claims "these individuals are studying plaintiff in relations to how the sodium pentothal effects (sic) his mind and intelligence for experiment purposes and a form of a forced relationship (Stockholming)." (*Id.* at ¶

5).  Plaintiff claims Defendant Eakins has violated his right against cruel and unusual punishment under the Eighth Amendment and interference with his freedom of speech, in violation of the First Amendment to the United States Constitution.

As previously mentioned, Plaintiff has sued Defendants Corbett and Wetzel because their "conscious decision" not to follow the wording of 61 Pa.C.S. § 4304(a) and Plaintiff states that this constitutes "cruel and unusual punishment, due process violation, equal protection of laws and abuse of power enforcing an unknown authority under the 1st Amend., 5th Amend., 8th Amend. and 14th Amend. in the United States Constitution causing emotional distress, pain and suffering." (Doc. 1 at ¶ 108).

Plaintiff also sues Defendants Corbett, Wetzel, and Pickens because the use of sodium pentothal in the prison will increase his tolerance to anesthesia, "causing another botched execution with severe burning, muscle, convulsions, pains and cardiac arrest against the smooth transition guaranteed." (*Id.* at ¶ 112).  Plaintiff claims that this conduct violates his rights against cruel and unusual punishment.  (*Id.*).  Additionally, Plaintiff avers his Fourth Amendment protection against illegal search and seizure was violated because the use of sodium pentothal "seiz[ed] his mental capabilities while searching for a way to deter plaintiff from speaking out." (*Id.* at ¶ 114).

As relief, Plaintiff requests a declaratory judgment that Defendants have violated his civil rights, a preliminary and permanent injunction ordering Defendants to stop the use of sodium pentothal in the prison food and commissary items, compensatory damages exceeding $500,000

against each Defendant, punitive damages exceeding $500,000 against each Defendant, a jury trial, and costs for the suit.[3]  (*Id.* at ¶¶ 117-122).

As discussed below, we find that Plaintiff has failed to state any cognizable constitutional claim and we will recommend dismissal, with prejudice, of his Complaint.

## IV.   DISCUSSION.

We initially note that Plaintiff's Complaint is fourteen (14) pages long, contains 123 paragraphs, and is rambling and disjointed.  Also, as previously mentioned, Plaintiff appears to be asserting allegations that are either time-barred or occurred in an improper venue.  For example, Plaintiff indicates he was transferred to SCI-Cresson on April 6, 2011.  Any alleged violations of civil rights that occurred at SCI-Cresson are clearly being raised in an improper venue, as SCI-Cresson is located in the Western District of Pennsylvania.  Further, since Plaintiff signed his Complaint on May 19, 2014, any claims accruing prior to May 19, 2012, would be time-barred by the two-year statute of limitations.[4]  In any event, it appears Plaintiff was incarcerated at SCI-Cresson until his transfer to SCI-Benner Township on April 29, 2013.  As such, we will only consider alleged

---

[3]Since Plaintiff seeks unliquidated damages, he cannot claim specific sums of relief. Pursuant to Local Rule 8.1, M.D. Pa., we will recommend that Plaintiff's requests for specific monetary damages be stricken from his Complaint.

[4]There is a 2-year statute of limitations with respect to a civil rights action in Pennsylvania.  See *Bougher v. University of Pittsburgh*, 882 F. 2d 74, 78-79 (3d Cir. 1989); *Fitzgerald v. Larson*, 769 F. 2d 160, 162 (3d Cir. 1985); *Martin v. Red Lion Police Dept.*, Civil No. 00-16122, M.D. Pa. (October 26, 2004 Memorandum), pp. 5-6; *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *8 (M.D. Pa.).

violations of civil rights that arose out of SCI-Benner Township. Therefore, as mentioned, we will not consider Doc. 1, p. 5, ¶ 47 through p. 8, ¶ 67 of Plaintiff's Complaint.

1. *Plaintiff's Exhaustion of Legal Remedies*

In his Complaint, Plaintiff admits he has failed to exhaust all of his available DOC administrative remedies. Specifically, Plaintiff states that he filed a grievance on July 25, 2013, and that it was received by the prison Grievance Coordinator on August 1, 2013. Plaintiff then states that the Grievance Coordinator denied his grievance on August 5, 2013. (Doc. 1, p. 11 at ¶ 106). Plaintiff claims that if he files another grievance, it could cost him "his life or other irreparable harm because of effects of sodium pentothal (stroke/heart attack) ... ." Plaintiff does not state that he then appealed the denial of his grievance to the Warden at SCI-Benner Township and to the DOC Central Office.

Thus, it is clear on the face of his Complaint that Plaintiff has not exhausted all of his available DOC administrative remedies with respect to his instant claims. (*Id.*). Regarding exhaustion as to Defendant Eakin, Plaintiff claims "[he] has made numerous attempts to inform Counselor Strum, Ms. Martinez and other CO's about CO M.E. Eakin and the anger she was placing in him through her forms of communication hiding behind an alleged investigation gone wrong." (Doc. 1-1, ¶ 9). Plaintiff does not even contend that he filed a formal grievance against Defendant Eakin. Thus, it is abundantly clear that Plaintiff has not exhausted his administrative remedies against any of his Defendants, namely, Corbett, Wetzel, Pickens, and Eakin.

A prisoner is barred from bringing a civil rights action in federal court "until such administrative remedies as are available have been exhausted." 42 U.S.C. §1997e(a). In screening Plaintiff's Complaint under the PLRA, the Court can *sua sponte* dismiss without prejudice Plaintiff's action regarding his constitutional claims which are not yet exhausted because his Complaint makes clear that he has not commenced the prison's administrative remedy process. (Doc. 1, p. 11). *See Jones v. Lorady*, 2011 WL 2461982 (M.D. Pa. 6-17-11)(citing *McPherson v. U.S.*, 2010 WL 3446879, *3-*4 (3d Cir. 9-2-10)).

In *McPherson v. U.S.*, 2010 WL 3446879, *3-*4 (3d Cir. 9-2-10), the Third Circuit stated:

> Failure to exhaust and the statute of limitations are similar "in the abstract": they are both affirmative defenses. But, a court may nonetheless dismiss a suit for failing to state a claim when the limitations defense is obvious from the face of the complaint. We see no reason why a district court, when screening a complaint pursuant to the PLRA, may not *sua sponte* dismiss a suit whose allegations make clear that the action is not timely. Indeed, other Courts of Appeals have recognized that dismissal under these circumstances is appropriate. *See, e.g., Fogle v. Pierson,* 435 F.3d 1252, 1258 (10th Cir.2006); *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir.2001); *Nasim v. Warden, Maryland House of Corr.,* 64 F.3d 951, 956 (4th Cir.1995) (en banc); *Pino v. Ryan,* 49 F.3d 51, 53-54 (2d Cir.1995).FN4 We agree that when a statute-of-limitations defense is apparent from the face of the complaint, a court may sua sponte dismiss the complaint pursuant to 28 U.S.C. § 1915 or 28 U.S.C. § 1915A.

*See Robinson v. Varano,* Civil No. 10-2131, M.D. Pa.; *Jones, supra*.

As the Courts have repeatedly held, it is well-settled that the Plaintiff inmate must exhaust his administrative remedies **prior** to filing a civil rights suit. *See Mitchell v. Dodrill*, 696 F.Supp.2d at 463-64; *Ahmed v. Dragovich*, 297 F.3d 201, 209 & n. 9 (3d Cir. 2002). In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under

§1997e(a) applies to all actions regarding prison conditions, including § 1983 actions or actions brought pursuant to any other federal law, including this *Bivens* action.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.; Woodford v. Ngo,* 126 S Ct. 2378 (2006); *Fortune v. Bitner*, 2006 WL 2769158, *7 (M.D.Pa.)("The PLRA mandates that inmates 'properly' exhaust administrative remedies before filing suit in federal court.")(citation omitted).  Further, the Defendants have the burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Fortune v. Bitner*, 2006 WL 2769158, *7.

"A prisoner must exhaust all available administrative remedies before initiating a federal lawsuit."  *Lombardi v. Pugh*, 2009 WL 1649908, *3(M.D. Pa. 6-9-09)(citation omitted).  Further, "the exhaustion requirement is not satisfied if the inmate files an action in the district court prior to completing the administrative remedy process."  *Id.*(citation omitted); *See also Mitchell v. Dodrill*, 696 F.Supp.2d at 463-64(Court stated that "most circuit courts are in agreement that a prisoner may not satisfy the PLRA's exhaustion requirement by exhausting administrative remedies *after* initiating suit in federal court.")(emphasis original)(citations omitted).

The Third Circuit has found three reviewing stages within the Pennsylvania DOC's grievance system: "Initial Review (DC-ADM-804 Part VI.B), which addresses the inmate's filed grievance; the first appeal from the Initial Review, known as Appeal to Facility Manager (DC-ADM-804 Part VI.C); and a second and final appeal, the Appeal to Secretary's Office of Inmate Grievances and Appeals (DC-ADM-804 Part VI.D)." *Spruill, v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004).  Further, in *Spruill*,

15

the Third Circuit held that the failure to exhaust under the PLRA constitutes a procedural default under the PLRA, and that the PLRA does not require "simple exhaustion" but rather "proper exhaustion." *Id.* at 226.

The Third Circuit has repeatedly stated that the PLRA "requires that inmate-Plaintiffs exhaust all administrative remedies prior to filing suit in federal court." *Banks v. Roberts*, 2007 WL 3096585, *1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted); *Ahmed v. Dragovich*, 297 F.3d at 209 & n. 9 . The *Banks* Court also noted that a futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Banks v. Roberts*, 2007 WL 3096585, *1; *Spruill v. Gillis,* 372 F. 3d 218, 228-230 (3d Cir. 2004); *see also Nyuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).

As stated, Plaintiff Ulrich admits on the face of his instant Complaint that the DOC at SCI-Benner Township has an administrative remedy process and that he has not exhausted his administrative remedies with respect to any of his present claims. Thus, Plaintiff's entire Complaint, as well as his Supplement, are subject to dismissal without prejudice until Plaintiff fully exhausts all of his DOC administrative remedies. *See Robinson v. Varano,* Civil No. 10-2131, M.D. Pa.; *Jones, supra*. However, despite Plaintiff's failure to have exhausted his claims, we will screen his Complaint because it is apparent that Plaintiff does not state a cognizable constitutional claim against any Defendant.

### 2. Defendants Sued in their Official Capacities

Plaintiff states that each Defendant is being sued individually and in their official capacities. (Doc. 1 at ¶ 8). To the extent that Plaintiff is seeking monetary damages (both compensatory and

punitive) against the state actor Defendants in their official capacities with respect to his constitutional claims, the law is clear that such a request for relief should be dismissed with prejudice, since Plaintiff can only seek monetary damages from Defendants in their personal or individual capacities.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa. 2010); *Gale v. Stori*, 608 F.Supp. 2d 629, 636 (E.D. Pa. 2009);  *Democracy Rising PA v. Celluci*, 603 F. Supp. 2d 780, 795 (M.D. Pa. 2009)("The Eleventh Amendment precludes private federal litigation against a state and its agencies.").  We find that any claim for damages against Defendants in their official capacities should be dismissed with prejudice.  Based on the above, we find futility in allowing Plaintiff to amend his constitutional claims.

   3.  *Plaintiff's Claim Pursuant to 42 U.S.C. § 1985(3).*

   Plaintiff avers that "[t]his is a civil suit authorized by 42 U.S.C. §1983 & §1985 to redress the deprivation and conspiracy of oppressive powers, under color of state law, of rights secured by the Constitution of the United States." (Doc. 1, ¶ 1).  Plaintiff did not indicate under what subsection of §1985 he was asserting a claim, but it appears that he was referring to §1985(3).

   In *Brookhart v. Rohr*, 385 Fed. Appx. 67, 70 (3d Cir. 2010), the Third Circuit Court stated:

> Section 1985(3) of title 42 requires a plaintiff to allege that invidious racial or otherwise class-based discriminatory animus lay behind the defendants' actions, and he must set forth facts from which a conspiratorial agreement between the defendants can be inferred. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). Brookhart did not allege that he was a member of a protected class, and his conclusory allegations of a deprivation of his constitutional rights are insufficient to state a section 1985(3) claim.

In *Roach v. Marrow*, 2009 WL 3103781, *5 (M.D. Pa. 9-24-09), the Court stated:

> The requirements for establishing a cause of action under 42 U.S.C.
>
> § 1985(3) are set forth in a line of Supreme Court cases beginning with the decision in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). There, the Supreme Court clarified that the reach of section 1985(3) is limited to private conspiracies predicated on "racial, or perhaps otherwise class based, invidiously discriminatory animus." *Id.* at 102, 91 S.Ct. at 1798. The Court strictly construed the requirement of class-based invidious animus in *United Brotherhood of Carpenters and Joiners of America, 610 v. Scott,* 436 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), finding that commercial and economic animus could not form  the  basis for a section 1985(3) claim. *Lake v. Arnold,* 112 F.3d 682, 685 (3d  Cir.1997). Consistent with these decisions, a plaintiff must allege the   following elements in order to state a claim pursuant to 42 U.S.C. § 1985(3):(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Id.*

Thus, "it is not enough that a Plaintiff falls within a class entitled to sue under §1985(3). Instead, the complaint must allege that Defendants have engaged in invidious discrimination against the protected class and that the invidious discrimination has caused the Plaintiff injury." *Roach v. Marrow*, 2009 WL 3103781, *6 citing *Majewski v. Luzerne County*, 2007 WL 1074769 (M.D. Pa. 4-9-07); *Goodson v. Maggi*, 2010 WL 1006901, *6("[M]ere conclusory allegations of deprivations of constitutional rights are insufficient to state a §1985(3) claim.")(citation omitted); *Patterson v. City of Philadelphia*, 2009 WL 1259968, *4 (E.D. Pa. 5-1-09)("Animus against an individual is not sufficient; animus must be class-based.")(citations omitted).

18

Plaintiff Ulrich does not raise a proper claim under §1985(3) against any Defendant.  Plaintiff does not indicate that he falls within a class entitled to sue under §1985(3).  Further, Plaintiff does not allege any conspiracy which  "was motivated by discriminatory animus against an identifiable class and that the discrimination against  the identifiable class was invidious."  *Farber v. City of Patterson*, 440 F. 3d 131, 135 (3d Cir. 2006).

Thus, we will recommend that Plaintiff's Complaint against all Defendants, insofar as it is under §1985(3), be dismissed with prejudice.  Based upon the above, we find that the Court should not allow Plaintiff to amend his Complaint with respect to any §1985(3) claim against any Defendant in federal court since it would be futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002);  *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).

4. *Plaintiff's Complaint as a Class Action*

Plaintiff indicates in his caption and "Plaintiffs" Section (II.) ethat his Complaint is filed on behalf of himself and "others similarly situated." (Doc. 1, p. 1).  Specifically, Plaintiff states "Plaintiff, Other (sic) similarly situated, are at all times mentioned herein are to adhere to the criminal statutes and punishments of the Commonwealth of PA.  Some are at Liberty.  Others are currently in the custody of PA's DOC and others are confined in S.C.I. Benner Township in Bellefonte, PA." (*Id.* at ¶ 4).  Plaintiff appears to be attempting to create a class action, consisting of past and current inmates incarcerated in DOC's custody.

In *Williams v. City of Phila.*, 270 F.R.D. 208, 213 (E.D. Pa. 2010), the Court stated:

> The requirements for maintaining a class action are set forth in Rule 23 of the
> Federal Rules of Civil Procedure. To be certified, a class must satisfy the four

prerequisites in Rule 23(a) and must fit within at least one of the three categories of class actions in Rule 23(b). Fed.R.Civ.P. 23; *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613-14, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "Unless each requirement of Rule 23 is actually met, a class cannot be certified." *In re Schering Plough Corp. ERISA Litig.,* 589 F.3d 585, 596 (3d Cir.2009). "As a result, '[a]n overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met.' " *Id.* (quoting *Beck v. Maximus,* 457 F.3d 291, 301 (3d Cir.2006)). We must therefore conduct a "rigorous analysis" to determine whether the prerequisites of Rule 23 have been satisfied, going beyond the pleadings if necessary. *Id.*

[1] Rule 23(a) requires that the movant demonstrate the following for certification:

(1) the class is so numerous that joinder of all members is impracticable,
(2) there are questions of law or fact common to the class,
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

Fed.R.Civ.P. 23(a). A decision to certify a class calls for findings by the court, not merely a 'threshold showing' by a party, that each requirement of Rule 23 is met." *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 307 (3d Cir.2008).

Rule 23(b)(2) permits certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).  Plaintiffs bear the burden of proof to show that the requirements in Rules 23(a) and (b) are met. *Davis v. Romney,* 490 F.2d 1360, 1366 (3d Cir.1974). When faced with "potentially cumbersome or frivolous" classes, Rule 23 gives district courts broad discretion in determining whether to certify a class and how to manage a certified class. *Reiter v. Sonotone Corp.,* 442 U.S. 330, 345, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979).

Thus, all four of the above stated elements have to be met by Plaintiff Ulrich in order to certify his case as a class action.  If Plaintiff does not meet any one of these elements, he cannot proceed with his proposed class action of past and current DOC inmates.

Plaintiff avers that the use of a "short-intermediate barbiturate," instead of the statutorily required "ultra-short acting barbiturate," will "violate Plaintiffs Ulrich and Others similarly situated's (sic) constitutional rights amounting to illegal killing." (Doc. 1 at ¶¶ 12-14).  Further, "Plaintiff Ulrich submits that the inmates have built a tolerance to these forms of anesthesias (sic) being used in the lethal injections.  We are being fed sodium pentothal through the prison food and commissary items." (*Id.* at ¶ 45).  Thus, Plaintiff's class action relates to two separate causes of action: the alleged illegal killing in violation of 61 Pa.C.S. ¶ 4304(a); and the various constitutional violations due to the alleged use of sodium pentothal in the prison food.

As stated, we find that Plaintiff Ulrich seeks to certify his case with a class consisting of past and current inmates confined in DOC prisons.  It is clear from the filings in the present case that Plaintiff Ulrich intends on acting as the class representative.  We find that Plaintiff Ulrich as a *pro se* inmate cannot seek relief on behalf of the countless past and future inmates confined in DOC prisons.  *See Oxendine v. Williams*, 509, F.2d 1405, 1407 (4th Cir. 1975); *Hagan v. Rogers*, 570 F.3d 146, 158-59 (3d Cir. 2009)("pro se litigants are generally not appropriate as class representatives.")(citing *Oxendine, supra*.).  Thus, Plaintiff Ulrich cannot serve as the class representative.  Further, Plaintiff Ulrich did not file a class action motion, and as discussed below, has no cognizable constitutional claim against any Defendant.  As such, we find his request to proceed as a class action should be denied.

5. *Defendants Corbett and Wetzel's Alleged Violation of 61 Pa.C.S. § 4304(a)*

As previously mentioned, Plaintiff avers that Defendants Corbett and Wetzel have violated Pennsylvania's Method of Execution statute, 61 Pa.C.S. § 4304(a), by using a "short-intermediate

barbiturate" instead of an "ultra-short acting barbiturate." (Doc. 1 at ¶¶ 12-14).  In sum, Plaintiff believes that he and other inmates similarly situated will be subjected to "a very painful and burning execution," which amounts to an illegal killing.  (*Id.* at ¶¶ 14 & 29).  Plaintiff states Defendants Corbett and Wetzel's "conscious decision" to disregard 61 Pa.C.S. § 4304 "violat[es] the Plaintiff Ulrich's rights and constituting cruel and unusual punishment, due process violation, equal protection of laws and abuse of power enforcing an unknown authority under the 1st Amend., 5th Amend., 8th Amend. and 14th Amend. in the United States Constitution causing emotional distress, pain and suffering." (*Id.* at ¶ 108).   We again make reference to the fact that Plaintiff Ulrich has not been sentenced to death in Pennsylvania.  As stated, the chambers of the undersigned called SCI-Benner Township to verify Plaintiff's sentence and we were informed that Plaintiff's aggregate state sentence was 12-24 years imprisonment.  As such, Plaintiff clearly lacks standing to assert any constitutional challenge with respect to Pennsylvania's execution law because Plaintiff has not been sentenced to death.

In *Spencer v. Kemna*, 523 U.S. 1 (1998),  the Supreme Court stated that "[t]he parties must continue to have a personal stake in the outcome of the lawsuit.  This means that, throughout the litigation, the Plaintiff must have suffered, or be threatened with, an actual injury traceable to the Defendant and likely to be redressed by a favorable judicial decision." *Id.*  (Citations omitted).

In *Nkemakolam v. Decker*, 2005 WL 2715905, *2 (M.D. Pa.), the Court stated:

> The case or controversy requirement of Article III, § 2 of the United States Constitution subsists through all stages of federal judicial proceedings. Parties must continue to have a " 'personal stake in the outcome' of the lawsuit." *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477-78, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990); *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975).

In other words, throughout the course of the action, the aggrieved party must suffer or be threatened with actual injury caused by the defendant. *Lewis,* 494 U.S. at 477. The adjudicatory power of a federal court depends upon "the *continuing* existence of a live and acute controversy." *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (emphasis in original). "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Id.* at n. 10 (citations omitted). "Past exposure to illegal conduct is insufficient to sustain a present case or controversy ... if unaccompanied by continuing, present adverse effects." *Rosenberg v. Meese,* 622 F.Supp. 1451, 1462 (S.D.N.Y.1985) (citing *O'Shea v. Littleton,* 414 U.S. 488, 495-96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)); *see also Gaeta v. Gerlinski,* Civil No. 3:CV-02-465, slip op. at p. 2 (M.D.Pa. May 17, 2002) (Vanaskie, C.J.).

*See also Fofana v. District Director for ICE,* 2009 WL 3616101 (M.D. Pa.).

Plaintiff Ulrich asserts a number of alleged constitutional violations with respect to Pennsylvania's execution statute, 61 Pa.C.S. § 4304. Specifically, Plaintiff avers that he and others will be subjected to "a very painful and burning execution" because Defendants Corbett and Wetzel are violating the statute. Thus, Plaintiff claims there are violations of "cruel and unusal (sic) punishment, due process violation, equal protection of laws and abuse of power enforcing an unknown authority under the 1st Amend., 5th Amend., 8th Amend. and 14th Amend." (Doc. 1, p. 12). However, it is quite clear that Plaintiff will not be put to death in the Commonwealth of Pennsylvania, as his aggregate sentence is 12-24 years.[5] Plaintiff is not threatened with any actual injury traceable to Defendants Corbett and Wetzel with respect to Pennsylvania's execution statute,

---

[5]Plaintiff also states, "As a citizen of the United States Cosntitution (sic) and Texas Judicial system refusing to give the manufacturer of their chosen drug will violate my constitutional rights, if I was to receive a death penaly (sic) case in their state." (Doc. 1, ¶ 35). Although unclear, it appears as if Plaintiff is asserting a possible constitutional violation in the event he was to be executed in Texas. Insofar as Plaintiff is attempting to assert such a claim alleging that he may be sentenced to death some day in Texas, this Court is certainly not the proper venue and such claim does not state an actual case or controversy.

61 Pa.C.S. § 4304. Thus, such claims Plaintiff is asserting cannot be redressed by a favorable decision by this Court.

Accordingly, we find that Plaintiff does not have a case or controversy before this Court, since he does not presently have any adverse effects regarding the alleged violations of 61 Pa.C.S. § 4304. Therefore, we recommend that all claims as to Defendants Corbett and Wetzel, insofar as they relate to alleged violations of 61 Pa.C.S. § 4304, be dismissed with prejudice. Based on the above, we find futility in allowing Plaintiff to amend his constitutional claims. *See Grayson v. Mayview State Hospital*, 293 F.3d at 111*; Alston v. Parker*, 363 F.3d at 235-236.

### 6. *Alleged Constitutional Violations Regarding the Use of Sodium Pentothal*

Plaintiff's Complaint largely has to do with the allegation that the prisoners at SCI-Benner Township "are being fed sodium pentothal through the prison food and commissary items. Our Central (sic) nervous system's (sic) are/have built a tolerance to the effects of these anesthesias (sic)." (Doc. 1 at ¶ 45). Plaintiff's states various symptoms caused by the sodium pentothal, including: large amounts of pressure in his head, understanding subliminal messages through music, television, signs, and signals, hearing voices and seeing images in his head, a drastic drop in weight loss, deep states of depression, and large amounts of perspiration while working out (*Id.* at ¶¶ 81-101). Plaintiff alleges a number of constitutional violations because the use of sodium pentothal inside SCI-Benner Township will build a "tolerance to counter-react the first anesthesia administered, thus, causing another botched execution with severe burning, muscle convulsions, pains and cardiac arrest against the smooth transition guaranteed." (*Id.* at ¶ 112). Plaintiff largely complains the use of sodium pentothal in the prison food and commissary items constitutes cruel and unusual

24

punishment in violation of the Eighth Amendment. (*Id.* at ¶ 112). However, Plaintiff also avers that Defendants Corbett, Wetzel, and Pickens violated the Fourth Amendment because they "seiz[ed] his mental capabilities while searching for a way to deter plaintiff from speaking out and evidence of this drug violated Plaintiff Richard Ulrich's rights and constituted illegal search and seizure." (*Id.* at ¶ 114). We find that Plaintiff 's Eighth Amendment claims are nonsensical.

In *Mitchell v. Dodrill*, 696 F.Supp.2d 454, 466 (M.D. Pa. 2010), the Court stated:

> The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space, and the need for some degree of ventilation and fresh air. *Helling v. McKinney*, 509 U.S. 25, 32 (1993). However, the Eighth Amendment does not mandate that prisons be free of discomfort *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). No static test determines whether conditions of confinement are "cruel and unusual." These terms must "draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society." *Tillery v. Owens*, 719 F. Supp. 1256, 1261 (W.D.Pa 1989).

> To establish an Eighth Amendment claim, Mitchell must show that he has been deprived of "the minimal civilized measure of life's necessities." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d. Cir. 1997) (*quoting Young v. Quinlan*, 960 F.2d 351, 359 (3d. Cir. 1992)). In reviewing this type of claim, courts have stressed the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" as critical to a finding of cruel and inhumane treatment. *Rhodes*, 452 U.S. at 362-363. Moreover, the focus must be on the deprivation of a particular basic necessity. As explained by the United States Supreme Court:

> Some conditions of confinement may establish an Eighth
> Amendment violation "in combination" when each wouldnot do so
> alone, but only when they have a mutually enforcing effect that

produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of single human need exists. *Wilson v. Seiter*, 501 U.S. 294, 304-305 (1991).

In addition to showing conditions that pose a significant risk of serious harm, the inmate must show that the person or persons responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Id. at 298*. As described by the Supreme Court in *Farmer,* the standard for determining deliberate indifference in a conditions of confinement case is whether a prison official knew of and disregarded an excessive risk to an inmate's health or safety. *Farmer,* 511 U.S. at 837. The Court added that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." *Id.* at 842.

To summarize, the Supreme Court has held that when an Eighth  Amendment claim is brought against a prison official, a Plaintiff must meet two requirements: (1) the deprivation  alleged must be objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  An objectively, sufficiently serious deprivation is one that denies the inmate "the minimal measures of life's necessities" such as food, water and shelter.  *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 419 (3d Cir. 2000) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 60 L. Ed. 2d 59 (1981)).  Furthermore, the Third Circuit defined deliberate indifference as  "a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001); *see also  Bizzell v. Tennis*, 449 Fed. Appx. 112, 115 (3d Cir. 2011).

The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer*, 511 U.S. at 837. Also, "mere negligence or inadvertence will not satisfy the deliberate indifference standard and cannot constitute a violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

Based on the facts alleged in his Complaint, Plaintiff Ulrich clearly has not stated sufficient facts for the Court to conclude that his Eighth Amendment conditions of confinement claims should proceed because he has failed to allege: (1) there was a deprivation that was objectively, sufficiently serious; and (2) that any named individual Defendant above acted with deliberate indifference to an excessive risk to his health and/or safety as required by *Farmer*. Plaintiff has not alleged a deprivation that would amount to a denial of "minimal measures of life's necessities" such as food, water, and shelter. Thus, we will recommend Plaintiff's cruel and unusual punishment claim, as to the alleged use of sodium pentothal in the prison food and commissary items, be dismissed with prejudice. Based on the above, we find futility in allowing Plaintiff to amend his constitutional claims. *See Grayson*, *supra*.

Plaintiff also alleges that Defendants Corbett, Wetzel, and Pickens violated the Fourth Amendment when they illegally "seized his mental capabilities while searching for a way to deter plaintiff from speaking out and evidence of this drug." (Doc. 1, p. 12). Thus, Plaintiff avers this "constituted illegal search and seizure." (*Id.*). In *Gale v. Stori*, 608 F.Supp. 2d 629, 633 (E.D. Pa. 2009), the Court stated that a "Fourth Amendment 'seizure' of personal property occurs when

'there is some meaningful interference with an individual's possessory interests in that property.'"

(citations omitted).

In *U.S. v. Nole*, 2006 WL 2085989, *2 E.D. Pa. (7-25-06), the Court held:

> The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The ability to exercise one's Fourth Amendment right, however, is limited. It is considered a "personal right that must be invoked by an individual.... [T]he extent to which [it] protects people may depend upon where those people are." *Minnesota v. Carter,* 525 U.S. 83, 88 (1998) (internal citation omitted); *see also Katz v. United States,* 389 U.S. 347, 351 (1967) ("The Fourth Amendment protects people, not places."). The Supreme Court has limited the "capacity to claim the protection of the Fourth Amendment" to those who have a "legitimate expectation of privacy in the invaded place." *Rakas v. Illinois,* 439 U.S. 128, 143 (1978). Moreover, the expectation of privacy must be a "reasonable one." *Florida v. Riley,* 488 U.S. 445, 455 (1989) (O'Connor, J., concurring).

*See also  Gale v. Stori,* 608 F.Supp. 2d at 635.

To state an illegal search claim against Defendants, Plaintiff must allege that the actions of Defendants constituted a "search and seizure" under the Fourth Amendment and that the search and seizure was "unreasonable."  *See Manolovich v. Park*, 2010 WL 4366265, *7 (W.D. Pa. 10-28-10).

In the prison context, the Third Circuit has stated:

> The defendants correctly assert that prisoners do not have a Fourth Amendment right to privacy in their cells. *Hudson v. Palmer,* 468 U.S. 517, 529, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration. *Id.* at 527, 104 S.Ct. 3194. Mindful that internal security is a chief concern in prisons, the Court recognized that it would be impossible to prevent the introduction of weapons, drugs and other contraband

> into the premises if prisoners maintained a right of privacy in their cells. *Id*.
> Therefore, "the Fourth Amendment has no applicability to a prison cell." *Id*. at 536,
> 104 S.Ct. 3194.

*Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001).

As previously stated, Plaintiff alleges that Defendants Corbett, Wetzel, and Pickens have seized his mental capabilities, *i.e.*, his mind, in violation of the Fourth Amendment due to their use of sodium pentothal.  We find that it is abundantly clear that Plaintiff has failed to state a cognizable Fourth Amendment claim against Defendants Corbett, Wetzel, and Pickens.  Thus, we will recommend that Plaintiff's Fourth **Amendment** violation claim be dismissed with prejudice against Defendants Corbett, Wetzel, and Pickens.  Based on the above, we find futility in allowing Plaintiff to amend his stated claim.  *See Grayson*, *supra*.

### 7.  Claims Against Defendant Eakin

On May 21, 2014, Plaintiff filed a Supplement Complaint (Doc. 1-1, pp. 1-2) to add Correctional Officer M.E. Eakin as a Defendant.  Plaintiff contends "there is a room where [Defendant Eakin] sits and watches the plaintiff through monitoring devices and sensors. Plaintiff is monitored 7 days a week and 24 hours a day with these monitoring devices, a new form of brain mapping, through sensoring (sic) devices here in the institution." (*Id*.).  Plaintiff believes Defendant Eakin would"torture plaintiff's mind and then reward him with vivid images (sexual in nature) of their bodies to release the anger inside of him." (*Id*.).  Plaintiff avers that Defendant Eakin's statement, "you will lose," "was to instill fear and paranoia into the plaintiff while eating, knowing that sodium pentothal was in the food hindered to petition government for redress and freedom of speech quit plaintiff about speaking out on his criminal case and

sodium pentothal and cruel and unusual punishment." Thus, Plaintiff avers that Defendant Eakin violated the Eighth Amendment's prohibition against cruel and unusual punishment and the First Amendment right to freedom of speech. (*Id.*). As previously stated, Plaintiff admits he has not exhausted his administrative remedies with regard to any claims against Defendant Eakin.

With respect to Plaintiff's Eighth Amendment claim of cruel and unusual punishment against Defendant Eakin, we find it is abundantly clear he has not stated a cognizable claim. As previously stated, Plaintiff must alleged a sufficiently serious deprivation that denies the inmate "the minimal measures of life's necessities" such as food, water and shelter. *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 419 (3d Cir. 2000) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 60 L. Ed. 2d 59 (1981)). Plaintiff's Eighth Amendment claim against Defendant Eakin relates to her allegedly monitoring Plaintiff "7 days a week and 24 hours a day." (*Id.*). Further, Plaintiff avers that Defendant Eakin is torturing Plaintiff's mind, rewarding him with sexual images, and studying Plaintiff for experiment purposes in relation to the use of sodium pentothal. (*Id.*). Plaintiff has not stated a cognizable claim under the Eighth Amendment because he has not alleged a deprivation of life's necessities. As such, we find that Plaintiff cruel and unusual punishment claim be dismissed with prejudice. Based on the above, we find futility in allowing Plaintiff to amend his constitutional claims. *See Grayson*, *supra*.

Plaintiff also alleges Defendant Eakin interfered with his freedom of speech in violation of the First Amendment. Specifically, "Defendant M.E. Eakin's statement, 'you will lose,' was to instill fear and paranoia into the plaintiff" such that he would not speak about the use of sodium

pentothal and his criminal case.  (*Id.*).  Plaintiff apparently filed a criminal complaint against

Defendant Eakin, which he withdrew on March 18, 2014.  (Doc. 1, p. 22).  Thus, Plaintiff

contends Defendant Eakin's statement interfered with his freedom of speech because he felt

fear and paranoia about speaking.

In *Jones v. Brown*, 461 F. 3d 353, 358 (3d Cir. 2006), "[t]he First Amendment, ...

prohibits [the government] from 'abridging the freedom of speech.'" We find that Plaintiff has

stated no viable First Amendment free speech claim with respect to Defendant Eakin's conduct.

Defendant Eakin's alleged conduct does not properly state that this Defendant placed a

restriction on Plaintiff's First Amendment rights.  Therefore, we find that Plaintiff's claim under

the First Amendment should be dismissed with prejudice as to Defendant Eakin.  Based on the

above, we find futility in allowing Plaintiff to amend his stated constitutional claim.  *See*

*Grayson*, *supra*.

### 8.  *Denial of Medical Care and Equal Protection Claims*

Plaintiff names Defendant Pickens because of a "deliberate indifference to Plaintiff

Ulrich's medical needs while treating others violated Plaintiff Ulrich's rights and constituted

cruel and unusual punishment and equal protection of the laws under the 8th Amend. and 14th

Amend." (*Id.*).  We will recommend that each of these claims against Defendant Pickens be

dismissed with prejudice.

As stated, in a § 1983 civil rights action, the Plaintiff must prove the following two

essential elements:  (1) that the conduct complained of was committed by a person acting under

color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights,

privileges or immunities secured by the law or the Constitution of the United States. *Parratt v.*

*Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993). Also, as

stated, it is well-established that personal liability under section 1983 cannot be imposed upon a

state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362

(1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt,*

*supra*. Further, in the Third Circuit, personal involvement of defendants in alleged constitutional

deprivations is a requirement in a § 1983 case and that a complaint must allege such personal

involvement. *Id.*

Based on the above-detailed allegations in Plaintiff's Complaint, it is clear that Plaintiff

fails to state the requisite factual specificity and allegations of personal involvement with regard

to his constitutional claims against Defendant Pickens. In fact, Plaintiff only mentions Defendant

Pickens in his "Defendants" and "Legal Claims" Sections of his Complaint. Defendant Pickens is

not mentioned anywhere in Plaintiff's "Facts" Section of his Complaint, Doc. 1, paragraphs 9-

105. Therefore, because it is clear that Plaintiff has named Defendant Pickens in his Complaint

solely on the basis of *respondeat superior*, which is not permissible in a civil rights action, we

will recommend that Defendant Pickens be dismissed from this action. Also, since Plaintiff has

not exhausted his DOC administrative remedies with respect to any of his claims, we find futility

in allowing Plaintiff the opportunity to amend his Complaint.

## V.      RECOMMENDATION.

Based on the foregoing, it is respectfully recommended that:

1.  Plaintiff's Motion to proceed *in forma pauperis* (Doc. 9 ) be **GRANTED** solely for the purpose of filing this action**.**

2.  Plaintiff's claims for damages against Defendants in their official capacities be **DISMISSED WITH PREJUDICE**.

3.  Plaintiff's claims arising under 42 U.S.C. §1985 be **DISMISSED WITH PREJUDICE**.

4.  Plaintiff's request for class certification be **DENIED**.

5.  Plaintiff's request for a specific amount of monetary damages (Doc. 1, p. 13)  be **STRICKEN FROM HIS COMPLAINT**.

6.  Plaintiff's Complaint (**Doc. 1**) be **DISMISSED WITH PREJUDICE** in its entirely against Defendants Corbett, Wetzel, Pickens, and Eakin.[6]

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: July 28 , 2014**

---

[6]Pursuant to our above discussion, we find futility of any amendment of Plaintiff's claims against Defendants, and we shall not recommend Plaintiff be granted leave to file an amended pleading with respect to these claims.  *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 235 (3d Cir. 2004); *Conway v. King Pharmaceuticals, Inc.*, 2008 WL 4128088, *2 (M.D. Pa.).

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RICHARD ULRICH : CIVIL ACTION NO. **1:CV-14-1025**
                                 :
                Plaintiff : (Judge Rambo)
                                 :
                v. : (Magistrate Judge Blewitt)
                                 :
TOM CORBETT, *et. al*, :
                                 :
                Defendants :

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **July 28, 2014.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis

of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.


<u>s/ Thomas M. Blewitt</u>

**THOMAS M. BLEWITT**

**United States Magistrate Judge**


**Dated: July 28 2014**